UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY J. PERRI, | ) | CASE NO. 5:25 CV 1325 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| LUANA J. JIVIDEN, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Timothy J. Perri filed this civil rights action to attack his 2004 conviction in the Portage County Municipal Court on charges of Menacing by Stalking.  He pled guilty to those charges and served 37 days in jail, followed by 2 years of probation.  *See State of Ohio v. Perri*, No. 04 CRB 1335K (Portage Cty Mun. Ct. Oct. 4, 2004).  He was convicted a second time for stalking the same victim in 2011.  *See State of Ohio v. Perri*, No. 2011 CR00586 (Portage Cty Comm. Pl. Ct. Aug. 2, 2012).  In this action, he sues his stalking victim, the State of Ohio, the Portage County Prosecutors, the Portage County Judges (one of whom Plaintiff admits is deceased).  He asserts that he has a First Amendment right to continue unwanted contact with a former schoolmate, that he should not have been arrested and charged with stalking when there was no official written restraining order, and that the pretrial bond set by the Judge was too high in violation of the Eighth Amendment.  (Doc. No. 1 at PageID #: 3).  He asks this Court to vacate his 2004 conviction and award him damages for pain and suffering.

## I.  BACKGROUND

Plaintiff's Complaint is difficult to decipher.  Plaintiff attended school with Ms. Jividen.

It is unclear what relationship they had (if any) at that time, but it appears that they were casual

acquaintances.  He states that she told him she did not know him.  (Doc. No. 1-2 at PageID #:

29).  He states they both attended Catholic school through the 8th grade and then attended the

same large public high school.  Because their last names began with the same letter, they often

had locker assignments in the same general vicinity or had the same home room.  (Doc. No. 1-2

at PageID #: 31).  He states that Ms. Jividen was nice to him in 9th grade and said hello to him.

He learned that she wanted to study nursing and was planning to attend University of Akron.  He

also decided to attend University of Akron.  They appear to have graduated high school in 1981.

After they started their first semester at University of Akron in September 1982, he called her

house and asked her to go to a concert or to have dinner with him.  She responded

noncommittally with "maybe in a few weeks."  (Doc. No. 1-2 at PageID #: 26).  He continued to

call her house and she continued to politely rebuff his attempts to go on a date.  He claims that

her politeness quickly faded and her tone became more abrupt and far less friendly.  He states

that this may have been around the time she met her husband.  Undeterred, Plaintiff continued to

call her, even after she was married, show up at her apartment or her parent's home, and send

unwanted communications to her.  She eventually called police when he showed up at her

apartment, uninvited in 1992.  He contends her father and her husband threatened to kill him.

In 2004, Plaintiff sent her multiple unwanted letters, each dated one or two days apart.

He refers to them as "reconciliation letters"; however, they are anything but conciliatory.  In

each letter, he demands a written apology from her for the way she treated him over the years.

Each letter offers personal information that he discovered about Ms. Jividen, which he shares for

what appears to be the sole purpose of letting her know that he is still monitoring her

movements.  In one letter, he states, "I recently found your current phone number (330) xxx-

xxxx and current address on the internet (even though they are both 'unlisted') for a small fee.

Therefore, there is no point in changing your current phone number or address because I will be

able to find them in the future (on the internet) as well."  (Doc. No. 1-2 at PageID #: 26).  He

states, "you don't have to worry about your safety, I am still residing in the Dayton, Ohio area

and I have no plans to go to the Akron/Kent area for at least 4-6 months."  (Doc. No. 1-2 at

PageID #: 26).  He states, "I would really like to know what you think is so great about [your

husband]  - (great enough to marry him) compared to me."  (Doc. No. 1-2 at PageID #: 33).  He

mentions that he "also found that [he] can obtain [L.P.]'s current address and phone number

(even though both are 'unlisted') over the internet.  If you choose not to respond, then

eventually, I may call her and ask her to speak to you on my behalf.  I would prefer not to have

to resort to that action."  (Doc. No. 1-2 at PageID #: 34).  He does not elaborate on the identity

of L.P. but it is apparent from the context that Ms. Jividen would know her and want to protect

her from contact with the Plaintiff.  In another letter, he mentions personal financial actions that

she and her husband took, and indicated he knew the location of her house and its current

valuation. (Doc. No. 1-2 at PageID #: 36).  After receipt of the 5th letter in ten days, Ms. Jividen

and her husband contacted police.

Plaintiff was arrested and charged with menacing by stalking, a felony.  He pled guilty to

the misdemeanor charge.  On October 4, 2004, the court sentenced him to 180 days in jail, with

143 days suspended and credit for time served.  He was placed on probation for two years.  He was ordered to have no contact with Ms. Jividen.

Plaintiff nevertheless continued his stalking behavior toward Ms. Jividen.  He was charged again with menacing by stalking in 2011.  *See State of Ohio v. Perri*, No. 2011 CR00586 (Portage Cty Comm. Pl. Ct. Aug. 2, 2012).  He pled guilty to the charge and was sentenced to 180 days in the Portage County Jail, fined $ 1,000.00 and ordered to pay court costs.  His sentence and $ 750.00 of his fine were suspended on the condition that he complete three years of probation, continue mental health treatment, and have no further contact with Ms. Jividen.  *Id.*

Plaintiff has now filed this action against Ms. Jividen, and the prosecutors and judges that participated in his criminal prosecutions.  Citing *Counterman v. Colorado*, 600 U.S. 66, 77-78 (2023), he claims he has a First Amendment right to contact Ms. Jividen, as long as his letters do not contain overt threats of violence.  He claims it was therefore illegal to charge him with menacing by stalking.  He states that the bond set by the Municipal Court in 2004 was too high, in violation of the Eighth Amendment.  Finally, he claims the court violated his Sixth Amendment right in 2004 because no official restraining order had been issued to him by a court.  He asks this Court to vacate his 2004 conviction and award him monetary damages.

## II.  STANDARD OF REVIEW

The Court is required to construe Plaintiff's *pro se* Complaint liberally and to hold Plaintiff's Complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir.2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999) (per

curiam), district courts are permitted to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid Complaint filed by a non-prisoner if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple*, 183 F.3d at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Dismissal on a *sua sponte* basis is also authorized where the asserted claims lack an arguable basis in law, or if the district court lacks subject matter jurisdiction over the matter. *Id*. at 480; *see also Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir.1990).

### III.  ANALYSIS

As an initial matter, Plaintiff is challenging his 2004 conviction.  To the extent he seeks to have his conviction vacated, he cannot obtain this relief in a civil rights action.  His sole remedy is habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  To the extent he seeks damages, he cannot proceed unless his conviction was overturned on appeal or called into question by the issuance of a writ of habeas corpus.  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).   Plaintiff's conviction still stands.  He cannot proceed with this civil rights action.

Furthermore, even if Plaintiff could proceed with a civil rights action, the statute of limitations has long expired for the claims he asserts.  Ohio's two year statute of limitations for bodily injury applies to claims asserted under 42 U.S.C. §1983.  *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995).  Plaintiff challenges his 2004 criminal conviction.  This action was filed in July 2025, well beyond the expiration of the two-year statute of limitations period.  These claims are clearly time-barred.  *See Fraley v. Ohio Gallia County*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998)(affirming *sua sponte*

dismissal of *pro se* §1983 action filed after two year statute of limitations for bringing such an action had expired).

In addition, none of the Defendants is subject to suit. The Judges are absolutely immune from suits for damages for actions performed and decisions made while presiding over a case. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). The Complaint does not describe any other actions taken by the Judges. Similarly Prosecutors are absolutely immune from suits for damages for actions they performed while representing the State or Municipality in a criminal action. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Again, there is no suggestion that Plaintiff is asserting any other type of claim against these Defendants. The State of Ohio is absolutely immune from suit under the Eleventh Amendment. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

Ms. Jividen is not subject to suit in a civil rights action. To establish a *prima facie* case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. Ms. Jividen is not a government official. She is a private party. Private parties are not acting under color of state law merely by acting as complainants or witnesses in state criminal actions. *See Briscoe v. La Hue*, 460 U.S. 325 (1983); *Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009). Moreover, Plaintiff has not included any legal claims asserted

-6-

against Ms. Jividen.  His claims challenging his conviction concern the fact that charges were brought against him by the prosecutors, that bail was set high by the judges, and that he was prosecuted by prosecutors for stalking even though a restraining order had not been issued against him.  None of those claims involve matters over which Ms. Jividen had control.

Finally, the Court is very tolerant of filings from *pro se* litigants.  It, however, will not permit any litigant to use the Court's resources to harass others.  Plaintiff has engaged in unwanted contact and stalking behaviors toward Ms. Jividen for over forty-five years.  He named her as a Defendant in this action, without asserting any claims against her, and provided incredibly personal information about her that was not requested by the Complaint form or the Court, including her maiden name, her date of birth and her social security number.   The Clerk's Office is ordered to redact this information from the pleading immediately.  Furthermore, Plaintiff is cautioned that this Court will not allow him to use its docket or resources to continue his pattern of harassment toward Ms. Jividen.  If he continues to file frivolous actions involving Ms. Jividen or any of her family members, he may be permanently enjoined from filing in this Court without first seeking and obtaining leave to do so.

## IV.  CONCLUSION

Accordingly, this action is **DISMISSED**. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

_____     8/26/2025
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**